Case No. 319-0069, City of Peoria. Assault by Kevin Sheehan, Firefighters' Pension Fund of the City of Peoria. Affidavit by Mark McQueary and Michael Brooks. Affidavit by Robert McCoy. Good morning. May it please the Court, Counsel, I'm Kevin Sheehan here on behalf of the appellant, City of Peoria. This is a dispute involving the pension board proceedings and the line-of-duty disability pension awarded to Michael Brooks, a former City of Peoria firefighter. On July 16, 2015, Mr. Brooks participated in a firefighter training exercise. During the training exercise, Brooks experienced a temporary aggravation of a pre-existing right knee condition. Brooks was later awarded, later applied for a line-of-duty disability pension, which was awarded by the pension board after proceedings, which I will discuss later. The city will concede that Brooks is permanently disabled. It appears that he does need a knee replacement, which would preclude him from returning to workful duties as a firefighter. However, the pension board clearly ignored the medical evidence when it awarded Brooks a line-of-duty disability pension. The medical records simply do not provide a sufficient nexus or a sufficient causal link between Brooks' work activities and his current knee condition. So there are two interrelated issues that we raise on appeal. First, the pension board had denied the City of Peoria's petition to intervene in the pension board proceedings. Our position, and we argue, is that that was an abuse of discretion. Second, it reflects the merits of the pension board's decision. It's an abuse of discretion. That is the standard. Correct. And second, we argue that the pension board erred in awarding Brooks a line-of-duty disability pension. And kind of just briefly touching on the background of the case. So, like I said, on July 16th of 2015, Mr. Brooks was participating in a training exercise in the collapsed house simulation. Brooks testified at the pension board proceedings that as he was pushing himself through a narrow opening, he used his right knee to push off a wall, and at that point in time, he began to experience pain in his right knee. He later applied for a line-of-duty disability pension in January 2016. And pursuant to the pension code, the pension board had Mr. Brooks seen by three different orthopedic surgeons to be evaluated. It was Dr. Alpert, Dr. Lewis, and Dr. Steele. So all three doctors examined Brooks, prepared written reports, and essentially all three of the reports state that Brooks, you know, he may have had a temporary aggravation of his preexisting osteoarthritis, but any permanent disability would be unrelated to the training exercise. Basically, they said he had, you know, a preexisting condition, and what happened in the training exercise may have caused some kind of temporary disability or temporary injury, but any long-term disability would be due to preexisting conditions. They diagnosed him as having severe osteoarthritis, synovial osteochondromatosis, the kind of conditions that don't develop overnight, the kind of conditions that would occur just through a training exercise. These are long-term, chronic degenerative conditions. And I think Dr. Steele aptly sums up Brooks' condition in his report, where he said, Mr. Brooks has advanced degenerative arthritis of his right knee that preexisted the date of injury. There is no documentation of any specific traumatic events at any period in his career that would have caused or aggravated his condition. It is clear from the above examination that the date of loss, the training exercise, is not the cause of his current state. And then he said that the disability is solely caused by his preexisting conditions. So shortly after the IME reports were provided to the pension board, the city filed a petition to intervene. And then the pension board holds its first hearing in March of 2016. Could the event contribute to his condition? Well, all three doctors seem to indicate that it was just a temporary aggravation, possibly a strain. But he goes on. So he has the initial examinations by the three IME doctors. And they end up producing ultimately nine reports. Each of the doctors produces three sets of reports. Essentially what they all say is that his condition, while he likely did need an knee replacement at that point in time, it was basically the training exercise wouldn't have caused that. This was preexisting conditions, basically from the medical evidence. I'm asking about if it contributed to the condition. From my review of the medical reports, it seems like it would just be temporary. If it did contribute, it just would have been a temporary exacerbation or a temporary aggravation of his knee condition. Is there a certainty that it was only a temporary aggravation? It seems fairly consistent amongst the three doctors that it was just a temporary aggravation. How do they phrase it if it would have been long-standing? I mean temporary rather than a more aggravated condition. Well, Dr. Steele said that his disability was solely caused by the preexisting condition. I know that the ultimate condition is this degenerative which is over time, correct? Correct. And that's what they say, the doctors. Correct. But would this event have triggered an aggravation which would have contributed to the condition, the ultimate condition? All I'm aware of is that the medical reports say it would be temporary. What caused him pushing off the wall? What harm it did at all? What would have been just a temporary contribution? How fine-tuned was their discussion of this temporary? Well, so he, it seems like, so all three doctors, they discussed temporary versus permanent. Dr. Alpert, Dr. Lewis, Dr. Steele all seemed to suggest it was temporary or indicated it was temporary. Dr. Alpert does say if he still experienced symptoms after conservative treatment such as physical therapy, that any permanent disability would be due to his preexisting knee condition. The ultimate condition would be the period of time. Right. And they do, so the pension board does switch gears. They kind of back off this single incident and they look at the cumulative effects, which is what the third report's provided by the doctors. I mean, that's the reason I'm asking the questions. Right. So, yes, so initially the initial report which just discusses the train exercise incident, after the initial report the city covers additional records which describe he did have more extensive knee issues and was testified to at the pension board proceedings. And then at the third report prepared by the doctors, they go into the, kind of describe the cumulative effects of firefighting. Because you can't be awarded a line-of-duty disability pension based on a single act of duty or cumulative effects of acts of duty. And so the three doctors do discuss the cumulative effects. Dr. Steele and Dr. Lewis opine that, you know, it's unlikely related, it doesn't appear to be related to his work activities or cumulative work activities. And of the nine reports, Dr. Alberts does opine that it could, the cumulative effects of his firefighting activities could be a factor in his knee condition. However, you know, but what he says is it's multifactorial. He says any activity as it relates to the knee can contribute to his degenerative osteoarthritis. Any activity. And would that make a difference, though, that report as far as the ultimate finding that you're trying to overturn? Yes, Your Honor. We would say there's still a duty or there's still an obligation by the pension board to find that there's a sufficient nexus between the workplace activities and the ultimate disability that the firefighter has. There are many times with multiple causes for many conditions, correct? That's correct, yeah. And that's what that one report is suggesting? That's correct, yeah. The Dr. Albert report, that was his third report. He did say it was multifactorial. He says, you know, that would be one factor of many. Well, one factor of many, but he was asked, when he was asked to prepare the report, it was asked over the 24 years of Mr. Brooks as a firefighter, you know, the cumulative effects, would that have a causal relationship to his injury? Sure. Can I ask you to rewind your asked questions beginning with the timeline? You had just gotten to March 15th when the hearing occurred. Then in April, didn't you file a petition to supplement the record before intervention was denied? So intervention was denied at the March, yes, we initially filed a petition to intervene on March 9th of 2016. The pension board hearing is held. March 15th. At March 15th. And I could be off. That's correct, Your Honor. And we were, our petition to intervene was denied at that hearing, and so. But then what happened after that? The city was allowed to supplement the record during the course of the hearing. The city was asked if they had any other exhibits or information to share with the board. Even though intervention was denied, how was the city prejudiced? What couldn't you get in that you wanted to get in? Well, so the way we supplied the record, we uncovered those additional records from January 2014 from Mr. Brooks's primary care doctor, which showed that the extent of his knee condition appeared to be inconsistent with what he testified to at his initial pension board hearing, where his attorney and Mr. Brooks seemed to indicate, you know, he had some, a few aches and pains, but his knee was essentially fine. At the January of 2014 doctor's office visit, he tells his primary care physician that he's a history. Were those records given to the independent medical examiners, though? That's correct, Your Honor. So the pension board allowed that evidence to be considered by the medical examiners and it didn't change their opinion? That's correct, Your Honor. And they essentially said they didn't change their opinions from their first reports. They said, you know, it appeared to be a temporary aggravation of his previous condition. So my question is, although intervention wasn't allowed, what was it? What are you complaining of here that you would have done if you had been allowed to intervene? What would you have done differently? Yes, Your Honor, I think the big issue is we're not allowed to question Brooks, we're not allowed to cross-examine Brooks. We feel that there was a huge, glaring evidentiary void of what exactly was his knee condition prior to the training exercise incident. We get this small piece of evidence from his primary care doctor where it says he's got a. . . So the only thing that would have been different is you would have cross-examined the applicant? We would have cross-examined the applicant, asked, you know, if he had any additional treating medical providers and if there's any additional medical records that may have been out there. But, yes, cross-examining Brooks would have been the primary goal of our intervention. But there's no indication. Is there? . . Is there other information out there? Well, we don't know. I mean, that's kind of the big question here is we wanted to cross-examine Brooks and determine what is the extent of, or what was the extent of his knee condition. He told his primary care doctor that there was a history of a torn cruciate ligament in his right knee prior to the training exercise. And we don't see that anywhere else in the records. And I think that's, you know, something that should have been asked by the pension board and the city should have been allowed an opportunity to ask Mr. Brooks about, you know, exactly what was the extent of, you know, his knee condition prior to the training exercise. You know, there's evidence out there that his knee condition was worse than what he indicated at his pension board hearing. You know, if you had a history of torn cruciate ligament, then that's a pretty significant issue that the city wanted to question him on. Getting back to the intervention issue, academically, if we were to agree that the trial court did not abuse its discretion by denying your request to intervene, then are we allowed to consider here any of your arguments regarding the sufficiency of the evidence or the weight of the evidence? Yes, Your Honor. Our position would be that you would still be permitted to consider the merits of that case. If the board is allowed to intervene down below, how is it we can consider your arguments here? I think that goes to the issue of standing, whether the city would have standing to appeal the pension board's decision. Our position would be that there's a couple of cases. The Stickney case and also the Ficarce case would support the position that, due to the fact that the city has a financial interest in the outcome of the pension board proceedings, although if the city was not properly allowed to intervene. Did you request to intervene here in this court? Within the appellate court, no. We appealed the circuit court decision, which had affirmed the decisions of the pension board. But no separate independent petition to intervene here? That's correct, Your Honor. All right. Thank you for answering my questions. Counsel, you have two minutes. In turning briefly to the merits of the pension board's ultimate decision, if you look at the initial medical reports that were provided, the first three medical reports of the doctors, I think it's fairly clear that they say that, you know, at most, you could have had a temporary aggravation, a temporary exacerbation of his preexisting knee condition. You know, after the pension board looks at those records Those are the final reports of their final conclusions, right? That's correct. You know, you have a preliminary discussion by the medical people, but then you have their last reports, and the last reports is when they look at the whole picture, right? That's correct, Your Honor. And I think that goes back. So isn't that the key, is the last report? Rather than keying in on the early reports? And I think our response to that would be yes, and if you look at those last three reports, the only one that even potentially provides a causal link is that Dr. Alpert report. Even there, though, however, that there still has to be a nexus between the workplace activities and his current disability or his permanent disability. That one report seems to lead that way, right? It does, Your Honor, but I would say it's so vague. He says any activity could contribute to the knee condition, and we would say, you know, if any activity can contribute to the condition, it's hardly a nexus between the workplace activities and the current condition. I guess, you know, anyone with a bad back or a bad shoulder, bad knees, just the fact of showing up to work would, under that standard, would allow for a line-of-duty disability pension. I mean, it's such a vague, amorphous standard that I think it would be hardly any standard at all. And that's what Dr. Alpert stated. Like I said, I think that's hardly a substantial nexus or a nexus between the workplace activities and the ultimate disability. Thank you very much. Thank you. Mr. McQuarrie, you're up first. Yes, Your Honor. Good morning, Your Honors. May it please the court, counsel. My name is Mark McQuarrie, and I represent the Board of Trustees of the City of Peoria Firefighters Pension Fund. We assert that you should affirm the Pension Board's decision based on three reasons. Number one, under the manifest, we have the evidence standard. There is competent evidence in the record supporting the Pension Board's finding that Firefighter Brooks was in fact disabled as a result of the cumulative effects of a line of duty. Secondly, the Pension Board did not abuse its discretion when it did not allow the city to be a full-party litigant in the pension area. Thirdly, and in the alternative, even if you were to find that this was a technical error, under the administrative review law, it does not warrant overturning the Pension Board's well-founded decision. Turning to the first point, Justices, there is credible evidence. We assert, first of all, that the manifest weight of the evidence standard applies. Under Marconi, the Illinois Supreme Court said when you're applying facts to whether or not a firefighter or police officer are entitled to a line-of-duty disability pension, that is a question of fact. As such, the manifest weight of the evidence standard applies. Under the manifest weight evidence standard, so long as there is any or some competent evidence in the record, the Pension Board's decision should be affirmed. I would direct this Court to look at Dr. Albert's report, in which this Court is well aware that the cumulative effects language is within Article IV of the Pension Code and qualifies a firefighter to receive a line-of-duty disability pension. Dr. Albert, after reviewing the firefighter job description, being given all the evidence provided both by the Pension Board and the city, made a conclusion that after 24 years of firefighter service, firefighter Brooks was in fact disabled, in part, as a result of 24 years of his service in the fire department and fit the definition under cumulative effects. As this Court is also aware, in granting a disability pension, the act or acts, in this case cumulative effects, need not be the sole or primary cause. It is sufficient to demonstrate that it aggravated, exacerbated, or in some way contributed to the disability. I believe Dr. Albert's report is clear that, though multifactorial, it in fact contributed to his disability. In addition, the Pension Board also weighed the testimony of firefighter Brooks, in which he testified that he crawled on his hands and knees over 1,000 times as a firefighter for the city of Peoria. He engaged in fire suppression, emergency response. This is a physical job. That, coupled with the expert medical opinion of Dr. Albert, who has a quite impressive curriculum vitae that the Board had entered into evidence, along with the other CVs, found that this was a sufficient nexus and a sufficient basis to award firefighter Brooks a line-of-duty disability pension. In turn, we also encouraged this Court to treat the Pension Board just like it would treat a jury's verdict. Their job is to sift through the evidence, weigh the credibility of witnesses, and to resolve conflicts in the testimony and the evidence. They did that simply because the city of Peoria doesn't like the outcome, is not a cognizable reason to overturn the Pension Board's decision. In turning to the intervention question, we maintain that the Pension Board did not err or abuse its discretion with respect to denying the city intervention. In fact, when reading the record in its entirety, I think you'll find that the city, in some sense, was allowed to intervene, though in a limited circumstance, consistent with Williams. Why not? Why not allow them to intervene? It's sensitive to all these benefits. It's simply a cross-examination. The Board still has discretion, Your Honor. Based on the case law, that's still applicable. I know they have discretion. Sure. Why not balance that? Give them the right to intervene. Well, I think they gave them limited intervention, and that's where I was going with my argument, Your Honor, because they allowed them to produce evidence that was admitted into the administrative record and entered into evidence. They were allowed to petition, to reopen proofs, and to submit additional evidence. When asked, are you going to call any witnesses, the city said no. When they said, we want the right to cross-examine, the hearing officer, I would direct this court to the record on C-931, said, well, make an offer of proof. What are we going to learn from your cross-examination? The city balked at that opportunity. They never produced an offer of proof as to what the Pension Board would glean to create a more robust record, and I think that's directly on point with the Stickney case, in which the court commented, hey, the city had the opportunity to make an offer of proof. They didn't do that, and therefore, they were not prejudiced, and I think that's an important point. Can you tell that for two minutes? Thank you, ma'am. Again, the city also put forth the issue of PACEBA benefits, the Public Safety Employee Benefit Act, and just to touch briefly on that, they never gave any factual basis why PACEBA applies. As this court is also aware, PACEBA is predominantly a police officer-centric statute. Didn't Mr. Brooks say he would not be applying for those benefits? There's no evidence in the record that he ever applied for those benefits, and the city never put forth any information that he applied for those benefits. So the only issue would be, with respect to PACEBA, is responding to an emergency. The other ones involve apprehending a felon, investigating a crime, and fresh pursuit. The city put forth no factual basis why PACEBA benefits were applicable. They simply came in and said, we're hoisting the flag of PACEBA, and that gets us in without any facts. If the panel has no further questions, I'll wrap up and give the remaining time to my colleague. I'll address the question that I directed at your opposing counsel, and that is, if we assume, just for the sake of argument, were to affirm the board's decision not to allow intervention, do we get to the weight of the evidence arguments at all? I think this court could review whether there's some capital evidence in the record, but I think that's a deferential standard, and if this court were to find that the basis of the pension board's decision can point to some capital evidence in the record, I think the pension board wins. Okay, so my question is, if they should not have been allowed to intervene, then they are not a participant. Correct. So are we allowed to consider their arguments? They're the only ones complaining about this decision, and whether it was or was not against the manifesto weight of the evidence. Our position would be that they don't have standing, then, to contest the underlying decision if they do not have a right to intervention here. Correct. Thank you. Thank you, Your Honors. Thank you. And Mr. McCoy. Thank you. Thank you, Mr. Court of Counsel. I am Rob McCoy, and I am representing Michael Brooks, and I do want to focus a little bit more on the intervention issue. I'll address the other question to the Court. We start from the principle that there's no statutory right to intervention. It was kind of the Court-created right to intervene. Not a right to, but a discretionary power of the pension board, more accurately. And the cases that stick in the cases, the one that really first described this discretionary right, and it says the Court said in that case, we believe the pension code grants the board the general authority to conduct hearings and to allow or disallow full or partial participation in those hearings. So there's really three options. Deny intervention altogether, allow partial intervention, or allow full intervention. And here they had partial intervention by the city, where the city was allowed to present evidence. Does that defeat my concern about whether the city has standing here? If they were allowed to partially intervene below, then doesn't that give them standing here? I think not. The law, to be frank, is kind of confused here because of that Carves case which I discussed, where the Carves Court decided the general rule that you have to both be affected by the controversy and be a party to have standing. And the city was not formally given party status. And then the Carves announced that rule, and then they sort of disregarded it and said, well, here there was systematic disregard of the pension code calculations, and so we're going to allow intervention. You didn't answer my question. Okay. I want you to return to yours. Okay. But as to the partial intervention, you've heard that the city was allowed to put in evidence, and they'll put in the evidence of Dr. Adams about the torn cruciate ligament. And all the physicians, consulting physicians, considered it and said, ultimately, it does not matter. It doesn't change our opinion one bit. But the city says, well, we were not allowed to cross-examine. And my colleague started to bring this up, but I'm going to follow up on it. They didn't do an offer of proof. In the Stickney case, the little Stickney case, the rest of this, they said, you know, here the governors failed to make or even attempt to make an offer of proof before the board as to what information cross-examination would produce. So in that case, the appellate court found that there was no abuse of discretion in not allowing intervention there. And that's on all fours here. There was no offer of proof of what cross-examination would have produced. So what is the city complaining about? They put in the evidence. It was considered by the medical doctors. It was ultimately found to be not relevant. As I understand it, this record shows that the city did request to make an offer of proof. And in addition to that, when they were solicited, there was a solicitation to make it. Yes. And that was... Yeah. I agree with that. That's what the record shows. So I think under Stickney, besides that there should not be an intervention, and I think under the general rules there should not be standing, but I don't think the court needs to go that far. But I do question if the court were to allow, or say intervention must have been granted here, that there was an abuse of discretion in denying intervention here. I think we're creating a new rule that intervention is allowed in all cases because this was pretty much a garden variety. We have competing medical evidence, and the city doesn't like the outcome. Was there a partial intervention in this case? I think there was a partial intervention. I don't think there was party status, but there was allowed to present evidence and make an argument and say consider this. You know, simplistically, you're in or you're out, right? Yeah. Okay. So we know that if any intervention is denied, you're out. If intervention is allowed, you're in. Now, if you're partially in, are you in? That's the first standard. I mean, if they partially, you would agree that they're partially in, right? I would agree they're partially in. So if you're partially in, aren't you in? I'm splitting errors and saying you're not because they were not awarded parties standing in. Right. I understand the question. It's the only people who can present something. The party, right? Yeah. Did they present something? They presented evidence. So they had incidents of being a party. They didn't have the name party here, and they were not given full rights of a party, but they were given the most significant one is putting in evidence, yes. Let's say there's, to analogize from property law, there's a bundle of sticks. So not all their sticks were in, but some of their sticks were in, right? Some of their sticks were in. And I think it all comes back to the Stickney case where they said you could have full intervention or partial intervention or not intervention. And once again, this is kind of a court-created thing. We think it's assumed that the Pension Board has these powers. So the court-created case, it occurred to me that that case stands for a proposition that, well, the decider can decide we'll let you go in for everything or we can set the standard of what you can and can't do. That's what they did in this case. I think that's what happened. I think, though, if this court's going to take the additional step and say, there's an abuse of discretion here, you might as well get rid of the discretion altogether and say in every case the city can come in if they want to come in. Because as counsel addressed, I don't think there was a perceiver issue that was really here. There came a law of partial intervention. You came to a law of partial intervention. And they did that. I don't think they abused their discretion. And I think the record was helped by addressing, okay, well, we'll look at this issue and let's have the medical examiners go back and say, hey, does this change your opinion? This decision was never reviewed pursuant to administrative review in the circuit court, correct? It was administrative review by the city, yes. In the circuit court? Yes, of the intervention issue. I don't, you know, honestly, I do not recall that the ruling of the circuit court was more on the manifest way to the evidence. It just said, you know, there was evidence, Dr. Albert's report, the pension board was entitled to rely on it, affirm. Nobody challenged in the circuit court whether the city could bring administrative review as a non-part. I did. I brought a motion to dismiss, actually, saying that the city lacked standing because it was not. That was denied. So I did not cross-appeal that, but that issue was raised and it was denied. This is academically steamy. I can see why intervention would not be allowed by the pension board because it could impact who gets to request administrative review in the circuit court. In this case, it didn't have that impact. But thinking down the road is what I'm contemplating, and that is how does it affect generally the principle of the law. So thank you for answering my questions. Okay. I mean, it seems to me that I agree with both sides of the argument. On the one hand, you're saying no intervention, no rights to questions. And on the other hand, you're saying, well, there was enough intervention to allow us to say that there was no abuse of discretion. What I am saying is that there's broad discretion given to the pension board. The pension board used the discretion. They used it to allow other evidence to come in. They gave the city the opportunity to cross-examine. The city said we're not going to make an offer of proof, and now the city is saying, well, we want another bite of the apple. Having lost, we would like to go back and say we should have been able to intervene and cross-examine, but we were given the opportunity to say what we would have done in cross-examination, and now there's nothing on the record to say why this should be allowed to do cross-examination. So I am arguing for broad discretion of the pension board to control its own proceedings here, and here it's saying that they used it appropriately, and the city cannot really complain that it was inappropriately used, where the city cannot say what we would have done differently if we were given the right to cross-examine. And they were given every opportunity to say this is what we're going to cross-examine on, and the pension board fully accepted the evidence the city submitted and considered it. So I think that you cannot say under those factors there's an abuse of discretion here, and ultimately you cannot say there's a decision that's against the manifest weight of the evidence where you have the decision of, you know, the opinion of Dr. Albert that this was a cumulative effect of firefighting, and you have the testimony of Brooks about how this was a life-changing incident to him, and it was ongoing. And the city – I just – one last case addressed by the city was the Sapura case where a minority doctor report was rejected. That was one where the doctor was not qualified. He did not have any training or background in PTSD, which was an issue there. Here is Dr. Albert was highly qualified in this area, so they were entitled by case law to accept the minority report. So it's not against the manifest weight of the evidence. Thank you. I think counsel's admission that there was partial intervention would defeat or negate any argument that the city lacks standing to bring this appeal or to bring the circuit court review. And just a couple other issues very briefly. So the pension board ultimately ruled that he was entitled – that Mr. Brooks was entitled to a line-of-duty disability pension based on the cumulative effects of his workplace activities. However, the pension board voted to grant Mr. Brooks a line-of-duty disability pension only after receiving the first set of medical records. I think that indicates that they – it was predestined. They had already made up their decision before analyzing the cumulative effects issue. And then after we submitted multiple additional medical records, or the additional medical records of Dr. Adams, the pension board decided, well, let's look at the cumulative effects issue. And let's look at the cumulative effects issue and what Dr. Albert states. Basically, the pension board is hanging their hat and making their decision on one report out of all nine that were created for the pension board review. And what did Dr. Albert state? Dr. Albert stated that essentially any activity can contribute to Mr. Brooks' osteoarthritis, including the cumulative effects of duty over 24 years of service as a firefighter. Dr. Albert did not address whether he could have developed this condition outside of being a firefighter or just the effects of non-work activities could have contributed to this or established this by itself. I think that any activity over 24 years, I think that's, like I said, hardly a sufficient nexus to award a line-of-duty disability pension. I think, you know, if you have a bad back, any kind of cumulative or degenerative condition, and you're showing up to work, under this standard, would allow you to be awarded a line-of-duty disability pension. The pension code, of course, supports for non-duty disability pensions. That's always an option, and the pension board has a duty to review the evidence in front of them. Turning gears a little bit to the intervention issue, the opposing counsel mentioned the fact that the city of Atlanta can offer proof. The Supreme Court has held that there are specific requirements for an offer of proof. You have to ask the answer in specificity as to what you intend to introduce. The problem here is Mr. Brooks, at the pension board hearings, he seemed to indicate that his knee hardly had any problems. And then we get these medical records that say he has a history of a torn cruciate ligament. We honestly don't know what exactly Mr. Brooks will testify to, but the medical records seem to indicate that his knee was much worse than what he indicated at the pension board hearings. And that would be consistent with the reports that were prepared by the IMD physicians. So why couldn't you have stated that on the record during the hearing? You know, give us an offer of proof of what the cross-examination would be. I don't know. Why not state it on the record? The city did not articulate what the cross-examination would be. That's correct, Your Honor. But you're able to articulate it here. And that's correct. I'm uncertain as to why the city did not present one during the pension board proceedings. But I think it is due, in part, due to the fact that it's not entirely sure what Mr. Brooks will testify to, due to the seeming inconsistencies between his pension board testimony and what Dr. Adams' medical reports stated. But I don't think there's any further questions. If that's an option. Thank you, Mr. Sheehan. Thank you. Thank you all for your testimony. Sorry about that. Your arguments and that. We're going to take this matter under advisement and get back to where the written disposition is in a short time.